IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NETWORK ELECTRIC, INC., a Utah corporation; BEN M. HANSEN, individually; TERI HANSEN, individually; MATTHEW I. BARLOW, individually; LISA BARLOW, individually; and DOES I through X, ROE CORPORATIONS I through X,<br><br>Defendants. | MEMORANDUM DECISION & ORDER<br><br>Case No. 2:12-cv-00289<br><br>United States District Court Judge Tena Campbell<br><br>Magistrate Judge Dustin Pead |

This matter was referred to Magistrate Judge Dustin Pead by District Court Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(A) (Document Number 25). Currently pending before the Court are Plaintiff Developers Surety and Indemnity Company's ("Plaintiff") Second Motion to Amend/Correct Complaint (Document Number 30) and *pro se*[1] Defendants Matthew and Lisa Barlow's ("Defendants")[2] Motion to Amend/Correct Answer to Amended Complaint (Document Number 31). After careful review of the memoranda submitted by the parties, the Court concludes that oral argument would not materially assist in the determination of this matter. *See* DUCivR 7-1(f).

---

[1] In the Tenth Circuit, courts are instructed to liberally construe a pro se litigant's pleadings. *See Northington v. Jackson,* 973 F.2d 1518, 1520-21 (10th Cir. 1992). That said, pro se litigants are still held to the "same standard of care and same adherence to the rules of practice and procedure that govern other litigants." *Noland v. City of Albuquerque,* 2012 U.S. Dist. LEXIS 120782, *14 (citing *Garret v. Selby Connor Maddux & Haner*, 425 F.3d 836, 840 (10th Cir. 2005)).

[2] The Court notes that there are several named defendants (Network Electric, Inc., Ben M. Hansen, Teri Hansen) in this case. The Barlows, however, are the only party that has motioned the Court to amend their answer, and therefore are the only "Defendants" referred to in the Court's Decision.

1

## I. BACKGROUND

Plaintiff is an Iowa-based corporation that issued surety bonds in April 2004 to Defendants on behalf of Network Electric, Inc. ("Network Electric") (Document Number 3). On April 28, 2004, as partial consideration for issuance of the bonds, Defendants executed an Indemnity Agreement ("Agreement") requiring them to indemnify Plaintiff from all liability under the bonds. *Id.* The bonds were to be used for performance and materials payments to general contractors involved in the construction of the Department of Veterans Affairs Medical Center. *Id.* Following issuance of the bonds, Plaintiff received claims from subcontractors and suppliers alleging that Network Electric had defaulted on its payment obligations. *Id.* Plaintiff paid many of the claims, incurring costs of nearly $400,000. *Id.* Plaintiff argues that under the terms of the Agreement, Defendants are obligated to provide reimbursement for amounts expended as surety for the bonds; however, Defendants contend they are not required to indemnify Plaintiff for its losses.

On April 5, 2013, Plaintiff filed a Second Motion to Amend/Correct the Complaint (Document Number 30). Three days thereafter, Defendants filed their own Motion to Amend/Correct the Answer, proposing to add three affirmative defenses that they claim were inadvertently omitted from their original Answer (Document Number 31). The Court addresses each of these pending motions in turn.

## II. LEGAL STANDARD

Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court held that leave to amend should be "freely given" provided that there

is no "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." As noted by the Tenth Circuit, Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equipment*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoo-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

For Courts, the "most important factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). This generally occurs when the "amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter*, 451 F.3d at 1208 (citing *Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice since the plaintiff's amended claims "track[ed] the factual situation set forth in his [original] claims"); *see also Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1228, 1243 (10th Cir. 1982) (ruling that the district court's refusal to allow an amendment was "particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint"); *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751-52 (10th Cir. 1975) (finding no prejudice when "[t]he amendments did not propose substantially different issues").

### III. ANALYSIS

**1. Plaintiff's Second Motion to Amend the Complaint**

Plaintiff moves the Court for leave to file a Second Amended Complaint in order to add new defendants, Omega Electric, LLC and Erika K. Geffre, and new causes of action for breach of fiduciary duty, fraudulent conveyance, civil conspiracy, unjust enrichment, and intentional interference with contractual relations (Document Number 30, 30-1).  None of the named Defendants have filed an opposition to Plaintiff's Motion to Amend the Complaint.

Upon consideration and in accordance with Rule 15's liberal amendment standards, the Court finds that Plaintiff's amendment will not cause Defendants to suffer any undue prejudice since the amended claims and parties follow the factual situation, and do not arise from a different subject matter, than that set forth in the original Complaint.  Accordingly, Plaintiff's unopposed Motion to Amend the Complaint is granted (Document Number 30).

**2. Defendants' Motion to Amend**

Defendants move the Court for leave to file an Amended Answer in order to add three affirmative defenses that they assert were inadvertently omitted from the original Answer: (1) failure to mitigate damages; (2) lack of consideration; and (3) Utah Partnership law, Utah Code Ann. §48-1b-703(1) (Document Number 31).  Plaintiff opposes the motion, asserting that Defendants' proposed defenses are untimely, prejudicial and futile (Document Number 32).

The Court shall address each of Plaintiff's arguments herein.

    **a.  Timeliness**

Plaintiff asserts that Defendants should not be allowed to file their Amended Answer because it is untimely (Document Number 32).  Under the parties' stipulated Scheduling Order (Document Number 28), the deadline for filing motions to amend pleadings and add parties was

April 7, 2013; however, Defendants did not file their motion to amend until April 8, 2013---one day after the deadline (Document Number 31).

In considering timeliness, the Tenth Circuit has held that "[l]ateness does not of itself justify the denial of the amendment." *R.E.B., Inc. v. Ralson Purina Co.,* 525 F.2d 749, 751 (10th Cir. 1975). However, the longer the delay, the more likely the court will deny the motion. *Minter v. Prime Equipment*, 451 F.3d 1196, 1204 (10th Cir. 2006). Upon review, the Court concludes that although Defendants filed their motion the day after the pleading deadline, there was still four months left in the discovery period. Further, in filing their motion one day late, Defendants do not appear to have "knowingly delay[ed]" raising issues in preparation for trial. *Id.* Therefore, the Court concludes that untimeliness does not bar Defendants' amendment.

    **b.  Undue Prejudice**

Next, Plaintiff claims that Defendants' proposed affirmative defenses expand the scope of discovery, thereby causing Plaintiff undue prejudice (Document Number 32). Defendants counter that the defenses will not unduly prejudice Plaintiff since they are based on claims contained in the Amended Complaint (Document Number 34) .

"Courts typically find prejudice only when the amendment unfairly affects the defendants [or plaintiffs] 'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). This occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter*, 451 F.3d at 1208. Defendants seeking to add affirmative defenses, as opposed to counterclaims, are unlikely to greatly increase the scope of discovery. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 559 (10th Cir. 2001).

Upon review, the Court finds that because Defendants' motion only seeks to add

affirmative defenses, as opposed to more discovery-intensive claims that raise significant, new factual issues, prejudice to Plaintiffs, if any, does not prohibit amendment.

### c. Futility of Amendment

Finally, Plaintiff argues that Defendants' proposed affirmative defenses are futile and should be denied (Document Number 32).

"Although it is true that courts should freely give leave [to amend] when justice so requires, 'a court may deny leave to amend based on the futility of the amendment.'" *Hodge v. Ocwen Loan Servicing*, No: 2:11-cv-00837-DN, 2012 WL 1434887, at *2 (D. Utah April 25, 2012) (citations omitted). In considering the futility of affirmative defenses, courts look to Rule 12(f) of the Federal Rules of Civil Procedure rather than Rule 12(b)(6).[3] *See Tiscareno v. Frasier*, No: 2:07-cv-336, 2012 WL 1377886, at *16 (D. Utah April 19, 2012); *Layne Christensen Co. v. Bro-Tech Corp.* No. 09-cv-2381, 2011 WL 3847076 at *6 (D. Kan Aug. 29, 2011).

Under Rule 12(f) insufficient defenses may be stricken from pleadings where they "cannot succeed, as a matter of law, under any circumstances."[4] *Tiscareno,* 2012 WL 1377886, at *6 (quotations and citations omitted). In striking a defense, "its insufficiency must be clearly apparent and no factual issues exist that should be determined in a hearing on the merits." *Livingston v. Sodexo, Inc. v. Affiliated Co.,* No. 11-4162-EFM, 2012 WL 2045292, at *2 (D. Kan. June 6, 2012) (quotations and citations omitted). A court should "proceed with extreme

---

[3] While some courts have held that the heightened pleading requirements of *Aschcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), apply to affirmative defenses, no federal appeals court has addressed the issue. *See Tiscareno v. Fraiser,* No. 2:07-cv-336, 2012 WL 1377886, at *16 (D. Utah April 19, 2012). Here, neither party has expressly provided the proper standard for determining whether a proposed affirmative defense would be futile. Accordingly, this court agrees with the reasoning set forth in *Tiscareno* and, as such, applies it here. *See id.* at *13-*16.

[4] Rule 12(f) provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is "to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Wilhelm v. TLC Lawn Care, Inc.,* No. 07-24645, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008).

caution in striking a pleading since "[m]otions to strike are not favored and any doubt as to the striking of a matter in a pleading should be resolved in favor of the pleading." *U.S. v. Badger,* No, 2:10-cv-00935, 2013 WL 1209165, at * 4 (D. Utah March 31, 2013).

With the foregoing in mind, the Court examines each of Defendants' proposed affirmative defenses for futility under Rule 12(f).

### 1. Mitigation of Damages

Defendants assert that they "are entitled to have their liability to Plaintiff eliminated because Plaintiff failed to mitigate its damages" (Document Number 31-1). Under Utah contract law, "indemnity contracts are subject to the same rules of construction as other contracts." *Pavoni v. Nielsen*, 999 P.2d 595, 599 (Utah Ct. App. 2000). As such, "the nonbreaching party has an active duty to mitigate his damages, and he 'may not, either by action or inaction, aggravate the injury occasioned by the breach.'" *Mahmood v. Ross*, 990 P.2d 933, 940 (Utah 1999) (citations omitted). Parties can, however, contractually waive the mitigation of damages defense. *See Bank of the West v. Sabey*, No. 2:10-cv-11652, 2012 WL 4325642, at *12 (D. Utah Sept. 19, 2012) ("[T]he duty to mitigate damages is not applicable when there is an absolute promise to pay.") (internal quotation and citation omitted).

Upon consideration of the parties' Agreement, the Court is unable to conclude, at this juncture, that Defendants' failure to mitigate defense is futile. While Section 2[5] states that the

---

[5] Section 2 of the Indemnity Agreement states, in part:
2. EXERCISE OF RIGHTS BY SURETY. In connection with the exercise of any of Surety's rights under this Agreement:
   2.1. Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed.
   2.2. Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to, expenses for investigative, accounting, engineering, and legal services.
   2.3. Surety shall have the foregoing rights, irrespective of the fact that Principal and/or Indemnitor may have assumed, or offered to assume, the defense of Surety upon any such claim.

"[s]urety shall have the right in its sole and absolute discretion to determine" how claims are handled and that the "[s]urety shall have the right to incur such expenses in handling a claim as it shall deem necessary," Sections 6,[6] and 7[7] address remedies available upon default and give Plaintiff the right to use and take possession of Defendants' equipment, materials, and supplies, as well as any or all sums due in which Defendants have any interest.  Because these remedies could mitigate or reduce Plaintiff's alleged losses, the Court is not convinced that a mitigation of damages defense could not "succeed, as a matter of law, under any circumstances." *Badger*, 2013 WL 1209165, at *4 (*citing Tiscareno*, 2012 WL 1377886, at *16).  As a result, the Court concludes Defendants' mitigation of damages defense is not futile.

---

2.4. In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred…or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitor.
2.5. Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety.  In any suit on this Agreement, Surety may recover its further expenses and reasonable attorneys' fees incurred in such suit.

[6] Section 6 states, in part:
6. REMEDIES UPON DEFAULT.  In the event of any default as described in Section 5 above, Surety in its sole and absolute discretion is hereby authorized by Principal and Indemnitor:
   6.3. In the event the Obligation, or any portion thereof, relates to development or construction of improvements upon real property: (i) to take possession of the work to be performed pursuant to all or any portion of the Obligation, and, at the expense of Principal and Indemnitor, to complete the performance required by the Obligation or to cause the same to be completed or to consent to the completion thereof, and to take any other action which Surety may deem appropriate in connection therewith; (ii) to take possession of Principal's and/or Indemnitor's equipment, materials, supplies, books, and records at the site of the work or elsewhere, and to utilize the same for completion of the Obligation or for any purpose which Surety deems appropriate or necessary…

[7] Section 7 states, in part:
7. ASSIGNMENT.  To secure the obligations of Principal and Indemnitor hereunder and any other indebtedness and liabilities of Principal or Indemnitor to Surety, Principal and Indemnitor hereby assign, transfer, pledge, and convey to Surety, effective immediately upon and only in the event that there shall be an event of default hereunder, all rights in and to the Obligation and the documents, contracts, or entitlements creating the Obligation, including, but without limitation, all right, title and interest in and to:
   7.2. Any and all machinery, plant, equipment tools, and materials which shall be upon the site or sites of the work or project which is the subject of the Obligation or elsewhere for the purposes of the Obligation, including all material ordered in connection with performance of any Obligation.
   7.3. Any and all sums due or which may become due upon partial or full performance of the Obligation and all sums due or to become due on all other contracts, covenants, and agreements whether bonded or unbounded, in which the Principal or Indemnitor has any interest, together with any notes, accounts receivable or chose in action related thereto.

### 2. Failure of Consideration

As their second affirmative defense, Defendants assert that "Plaintiff's claims are barred in whole for lack of consideration" (Document Number 31-1). Consideration is defined as "an act or promise, bargained for and given in exchange for a promise." *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 859 (Utah 1998).

In the case at hand, the Court concludes that there was not a lack of consideration. On April 28, 2004, Defendants signed the Agreement in exchange for the bonds (Document Number 32). In signing the Agreement, Defendants acknowledged that it was executed "in consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of the Principal." Therefore, Defendant's affirmative defense of the lack of consideration is futile.

In addition to *lack* of consideration, Defendants also argue, that the contract is unenforceable because of a *failure* of consideration. *See General Ins. Co. of America v. Carnicero Dynasty Corp.,* 545 P.2d 502, 504 (Utah 1976) ("Where consideration fails, there was a contract when the agreement was made, but because of some supervening cause, the promised performance fails."). Specifically, Defendants contend that consideration failed because they did not receive a benefit from the bonds because Defendants disassociated from Network Electric in 2005 and Plaintiff did not issue the bonds until three years after the Agreement was signed (Document Number 34).

While it is clear that Defendants' affirmative defense of *lack* of consideration would not succeed on the merits, based on the standard for striking defenses under Rule 12(f), it is unclear whether that Defendants' defense of *failure* of consideration could not "succeed, as a matter of law, under any circumstances." *Badger*, 2013 WL 1209165, at *4. Factual issues remain that must be determined before the Court can consider the merits of this defense, namely, whether

Defendants actually failed to receive a benefit from signing the Indemnity Agreement. Therefore, the Court concludes that futility does not bar Defendants from asserting their affirmative defense for failure of consideration.

### 3. Utah Partnership Law

As their third affirmative defense, Defendants assert that Utah partnership law bars them from liability since Plaintiff suffered damages more than two years after Defendants were disassociated from Network Electric.[8] In response, Plaintiff argues that Utah partnership law is irrelevant since Defendants signed the Agreement as individuals and not on behalf of a partnership (Document Number 32).

Under Utah Code Ann. § 48-1b-703(2), "a partner who dissociates without resulting in a dissolution and winding up of the partnership business is liable as a partner to the other party in a transaction entered into by the partnership…within two years after the partner's dissociation." Furthermore, under Utah Code Ann.§ 48-1b-101(f), a "partnership" is defined as "an association of two or more persons to carry on as co-owners a business for profit formed under Section 48-1b-202, predecessor law, or comparable law of another jurisdiction."

Upon review of the Agreement it appears that Defendant Matthew Barlow signed on behalf of Network Electric as both its vice president and as an individual (Document Number 30-2). While Plaintiff asserts that Defendants signed the Agreement as individuals and not on behalf of a partnership, it is not "clearly apparent" that Defendants' defense could not "succeed, as a matter of law, under any circumstances." *Badger*, 2013 WL 1209165, at *4. Again, factual issues that need to be determined before the Court can consider the merits of this defense; such

---

[8] In their pleadings, Defendants also argue that even if Utah Partnership law does not apply Defendants should be barred from liability because Plaintiff did not provide them with notice of Network Electric's default (Document Number 34). *See, American Bonding Co. v. Nelson,* 763 P.2d 814 (Utah Ct. App. 1988). However, Defendants' "failure to receive notice" defense is not included in Defendants proposed Amended Answer and as a result the Court shall not consider the futility of such defense at this time (Document Number 31-3).

as, the nature of Defendants' business agreement with Ben Hansen and the applicability, if any, of Utah Partnership law prohibit a determination of futility.

Accordingly, the Defendants' Motion to Amend the Answer to include affirmative defenses is **GRANTED IN PART**.  Defendant's proposed amendment for lack of consideration is denied as futile.

## IV. CONCLUSION

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's Second Motion to Amend the Complaint is **GRANTED**.  Plaintiff shall have ten (10) days after the date of this Order to file said Amended Complaint.

2. Defendants' Motion to Amend the Answer in order to include affirmative defenses is **GRANTED IN PART.**  Defendants shall have twenty (20) days after Plaintiff files its Amended Complaint to file its Amended Answer.

DATED this 14th day of June, 2013.

BY THE COURT.

_____
DUSTIN PEAD
United States Magistrate Judge