IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>NETWORK ELECTRIC, INC.; BEN M. HANSEN; TERI HANSEN; MATTHEW I. BARLOW; and LISA BARLOW,<br><br>Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:12-CV-289-TC |

Plaintiff Developers Surety and Indemnity Company ("Developers") filed suit to enforce an Indemnity Agreement signed by, among others, Defendants Teri Hansen, Matthew I. Barlow, and Lisa Barlow (collectively, "the Indemnitors").[1] The Indemnity Agreement was executed in favor of Developers, who issued surety bonds on behalf of Defendant Network Electric, Inc. When Network Electric failed to pay its subcontractors and suppliers on federal public works projects, Developers incurred losses, and sought payment from the Indemnitors. When Developers did not receive payment, it subsequently filed suit to collect damages for its losses. Developers now asks the court to grant summary judgment against the three individual

---

[1]Developers also brought suit against Network Electric, Inc., Ben Hansen, Omega Electric LLC, and Erika K. Geffre. Default judgment was entered against Network Electric and Ben Hansen. Developers is in the process of settling its claims against Defendants Erika Geffre and Omega Electric. Accordingly, this order only addresses claims relating to Developers and the three Indemnitors.

Defendants on Developers' contractual indemnity claim.[2]  Matthew and Lisa Barlow (both

proceeding pro se) have filed a cross-motion for summary judgment against Developers, in which

they contend that the Indemnity Agreement is unenforceable against them.  In support of their

cross-motion, the Barlows filed the affidavit of Matthew Barlow, which Developers has moved

to strike.[3]

For the reasons set forth below, the court finds that the Indemnity Agreement is valid and

that the Indemnitors are liable to Developers for breach of their obligations under the Indemnity

Agreement.

**INTRODUCTION**

On April 28, 2004, Developers Surety and Indemnity Company executed an Indemnity

Agreement with Network Electric, Inc., Matthew and Lisa Barlow, and Teri and Ben Hansen.

(See Indemnity Agreement, Ex. 1 to Pl.'s Mot. for Partial Summ. J. (Doc. No. 57).)  In exchange

for the parties' indemnification, Developers issued six Performance and Payment Bonds on

behalf of Network Electric, Inc. for federal public works projects in Utah.  When Network

Electric did not pay its subcontractors and suppliers on those projects, Developers (as the Surety

on the bonds) had to pay the subcontractors and suppliers and incurred a substantial loss.  When

Developers notified the Indemnitors of the loss, they refused to honor their obligations under the

_____

[2]The fiduciary duty, fraudulent conveyance, and civil conspiracy claims are not at issue in
the parties' motions and so they remain for adjudication. In addition, Teri Hansen filed a
crossclaim against Ben Hansen which has yet to be resolved.

[3]After the parties filed their motions and the court held a hearing, the court took the
motions under advisement pending a settlement conference.  The movants were not able to reach
a settlement agreement (see May 23, 2014 Minute Entry (Docket No. 86)), so the court now
issues its order.

Indemnity Agreement.  Developers filed suit in this court to enforce the Agreement.

## FACTUAL BACKGROUND[4]

In 2004, Network Electric anticipated that it would be submitting bids to the United

States government to perform public works contracts.  Network Electric sought out Developers

Surety and Indemnity Company to provide bonds for any work Network Electric did under a

federal contract.  On April 28, 2004, Network Electric and Developers executed the Indemnity

Agreement at issue here.  Defendant Matthew Barlow, who was the principal stockholder and

vice president of Network Electric at the time, executed the Indemnity Agreement on behalf of

Network Electric.  In addition, Mr. Barlow, Lisa Barlow (his wife) and Teri Hansen signed the

Indemnity Agreement in their individual capacities.

> The Indemnity Agreement expressly addresses consideration in the following language:
>
> The Principal [Network Electric] and Indemnitors [including Mr. and Mrs. Barlow
> and Teri Hansen] hereby waive and agree not to assert . . . [a]ny defense that this
> Agreement was executed subsequent to the date of any Bond, it being expressly
> understood and agreed that the Indemnitor hereby admits and covenants that the
> Bond was executed by [Developers] pursuant to the request of the Indemnitor and
> in reliance on the promise of the Indemnitor to execute and to perform this
> Agreement.

(Indemnity Agreement ¶ 8.1 (emphasis added), attached as Ex. 1 to Aff. of Daniel Berge (Doc.

No. 57-2).)  It further provides that the signers:

---

[4]The facts are taken from Developers' Motion for Partial Summary Judgment (Doc. No.
57).  Defendant Teri Hansen did not respond to the motion and, by her silence, has admitted the
truth of the facts.  "For the purpose of summary judgment, all material facts of record meeting
the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the movant's
statement of material facts will be deemed admitted unless specifically controverted by the
statement of the opposing party identifying and citing to material facts of record meeting the
requirements of Fed. R. Civ. P. 56."  DUCivR 56-1(c).  Similarly, the Barlows do not dispute
material facts set forth in Developers' motion.

hereby warrant that each Indemnitor is <u>specifically and beneficially interested</u> in obtaining the Bond. Indemnitor acknowledges that Indemnitor's <u>undertaking given hereunder is given in consideration of the execution or issuance of any Bond</u> coming within scope of this Agreement, and that [Developers] would not execute or issue any such Bond were it not for the execution and delivery of this Agreement by the Indemnitor.

(<u>Id.</u> ¶ 14.3 (emphasis added).)

The duties of the Indemnitors are set forth in Paragraphs 1 to 1.6 of the Indemnity Agreement. They are required to pay Developers for losses incurred as a result of issuing a bond on behalf of Network Electric. Developers was given "the right in its sole and absolute discretion to determine whether any claim under a Bond shall be paid, compromised, defended, prosecuted or appealed." (<u>Id.</u> ¶ 2.1.)

The Indemnity Agreement also contains a paragraph titled "TERMINATION OF INDEMNITOR LIABILITY," which mandates a specific procedure to follow if an Indemnitor wishes to be removed from his duties:

[T]his Agreement is a <u>continuing obligation of the Indemnitor unless terminated as to future bonds by written notice to [Developers]</u> as hereinafter provided . . . . In order to terminate liability as to any <u>future</u> Bond, the Indemnitor <u>shall</u>:

    13.1    Give to [Developers] written notice of such termination by certified mail, return receipt requested, addressed to [Developers] at [Developers'] Address; and

    13.2    State in such notice the effective date, which date shall not be less than 30 days following receipt of such notice by [Developers], of the termination of the liability of such Indemnitor for any future Bond.

(<u>Id.</u> ¶¶ 13.1-13.2 (emphasis added).) Importantly, under the Indemnity Agreement, the Indemnitors agreed that they would continue to be liable for any bond executed before the effective date of the termination. (<u>Id.</u> ¶ 13.3.)

In April 2005, Mr. Barlow executed a Stock Redemption Agreement with Network

Electric. Based on that agreement, Mr. Barlow sold and transferred all his stock and interest in

Network Electric and resigned as officer and director of the company. He consulted for a time

for Network Electric, but since January 2006, neither he nor his wife have been associated with

Network Electric or benefitted in any way from Network Electric's contractual dealings or

otherwise.

Between July 9, 2008, and May 21, 2009, Developers executed the bonds at issue. When

Developers incurred losses on the bonds, it contacted Mr. and Mrs. Barlow in March 2012 and

demanded payment from them as indemnitors. Developers also contacted Teri Hansen and

demanded payment. But the Indemnitors did not reimburse Developers for its losses.

The procedure for terminating liability to the surety, as set forth in the Indemnity

Agreement, is the only procedure the Indemnitors could follow to terminate future liability to

Developers for losses on bonds executed on behalf of Network Electric. But none of the

Indemnitors ever followed the written procedures for terminating their liability under the

Indemnity Agreement.

Matthew and Lisa Barlow contend that the Indemnity Agreement is unenforceable for

failure of consideration "because the Bonds were executed three and four years after [the

Barlows'] relationship with Network had ceased." (Barlows' Mem. Supp. Mot. Summ. J. (Doc.

No. 59-1) at 6.) They further contend that "each Bond was issued and executed for the sole

benefit of Network and [Defendant Ben M.] Hansen." (Id. at 7.)

For the reasons set forth below, the court finds that the Indemnity Agreement is a valid,

enforceable agreement and that Developers is entitled to summary judgment against the

5

Indemnitors.

## ANALYSIS

### *Motion to Strike*

To begin, the court addresses Developers' Motion to Strike or Exclude the Affidavit of

Matthew Barlow and Exhibits 1, 2, and 3 attached to the Barlows' motion for summary

judgment. Developers contends that the documents relied upon by the Barlows must be stricken

under Federal Rule of Civil Procedure 37(c) because the Barlows failed to identify Mr. Barlow as

a witness and to disclose the documents as required by Federal Rule of Civil Procedure 26(c).

According to the Barlows, their Initial Disclosure under Rule 26(a) did list Mr. Barlow as

a witness. As for the documents (a Stock Redemption Agreement, a verification of business

license from the State of Utah, and a completed registration statement submitted to the Utah

Department of Commerce indicating that Mr. Barlow was removed as VP and member of the

board of directors of Network Electric), the Barlows contend that the documents are public

documents which (1) are accessible to the public; and (b) were identified in their Initial

Disclosures.

In support of their motion to strike, Developers asserts that the documents were not

properly served and that electronic service (email) did not contain any attachment, so Developers

never received a copy of the documents until the Barlows filed their motion. Also, Developers

contends that the documents were not specifically identified in initial disclosures. The record

shows that the records were, apparently, included in general lists of document categories.[5]

_____

[5]Developers also complains that the Barlows said they would forward the records to
Developers as soon as they obtained the documents from the government entities but never did.

The court finds that even if the Barlows did not comply with Rule 26 (and the record

suggests they did comply), striking the documents would have no effect on the court's decision

because the information in those documents and Mr. Barlow's affidavit does not change the

court's legal interpretation of the Indemnity Agreement or other undisputed facts. Accordingly,

Developers' Motion to Strike (Doc. No. 66) is DENIED.

### *Cross-Motions for Summary Judgment*

The court may grant summary judgment where, making all reasonable inferences in favor

of the nonmoving party, there is no genuine issue of any material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Because there is no genuine

dispute of any material fact here, the court addresses only the dispositive legal issues.

Developers asserts that the Indemnitors breached the Indemnity Agreement. The Barlows

respond that the Indemnity Agreement is unenforceable for failure of consideration.

There is no dispute that the Indemnitors signed the Indemnity Agreement (and that they

did so in their individual capacities)[6], that Developers performed under the Indemnity Agreement

by issuing (and paying on) bonds for public works projects contracts awarded to Network

Electric, that Developers incurred significant losses as a result of its payment on the Bonds when

Network Electric failed to pay its subcontractors, and that the Indemnitors have not paid

Developers to reimburse it for its losses. The contract language is not disputed, and there is no

---

[6]Lisa Barlow states that she signed the Indemnity Agreement in her individual capacity
when she was told that, as the spouse of Matthew Barlow, she should sign it. This fact does not
change her contractual obligations. In the Indemnity Agreement, she warranted that she was
specifically and beneficially interested in obtaining the bonds. (See Indemnity Agreement
¶ 14.3.)

argument that the contract is ambiguous. There is no dispute that the Indemnitors did not follow the termination procedures in the Indemnity Agreement that could have released them from liability under the agreement.

According to Developers, the consideration supporting the Indemnity Agreement was Developers' issuance of the bonds, and that such performance was in exchange for the Indemnitors' promises written in the Indemnity Agreement.

But the Indemnitors assert that they are entitled to summary judgment because a supervening event created a failure of consideration in the written Indemnity Agreement. According to the Indemnitors, consideration fails where "there was a contract when the agreement was made, but because of some supervening cause, promised performance fails." General Ins. Co. of Amer. v. Cancicero Dynasty Corp., 545 P.2d 502, 504 (Utah 1976). They say the alleged supervening event was Defendant Matthew Barlow's sale of his stock in Network Electric and his resignation as Vice President of Network Electric.

Under Utah law, "[f]ailure of consideration exists 'wherever one who has either given or promised to give some performance fails without his fault to receive in some material respect the agreed exchange for that performance.'" Bentley v. Potter, 694 P.2d 617, 619 (Utah 1984) (quoting 6 S. Williston, The Law of Contracts § 814 at 17–78 (3d ed. 1962)) (emphasis added). Matthew Barlow's termination of his relationship with Network Electric did not create a failure of consideration. The Barlows, by failing to follow the termination procedure in the Indemnity Agreement when they ended their relationship with Network Electric, are not without fault. Here, the alleged failure of consideration of the Indemnity Agreement, i.e., Matthew Barlow's acts (and omissions), was caused by the Indemnitors.

8

The Indemnitors also contend that the Indemnity Agreement is not enforceable against them because they did not receive any benefit from Developers' performance (they were not associated with Network Electric at the time the Bonds were issued). But, as Developers notes, the "bargained for consideration is not affected by whether the Indemnitors received any benefit from the bonds." (Developers' Opp'n Mem. (Doc. No. 67) at 2.) The unambiguous Indemnity Agreement spells out the consideration:

> Indemnitor acknowledges that Indemnitor's <u>undertaking given hereunder is given in consideration of the execution or issuance of any Bond</u> coming within scope of this Agreement, and that <u>[Developers] would not execute or issue any such Bond were it not for the execution and delivery of this Agreement by the Indemnitor.</u>

(Indemnity Agreement ¶ 14.3 (emphasis added).) Nowhere in that description of consideration does the contract say that the Indemnitors must individually receive a benefit.

The Indemnity Agreement became an enforceable contract when the Indemnitors signed it and Developers issued the bonds. The fact that the bonds were issued after Mr. Barlow left Network Electric is not relevant. Each of the Indemnitors signed the agreement as individuals. The Indemnitors' obligation to Developers was not contingent on being officers or stockholders of Network Electric. And each Indemnitor expressly warranted that he or she was "specifically and beneficially interested in obtaining the Bond." (Id. ¶ 14.3.)

The Indemnitors did not follow the mandatory termination procedure. Selling stock in Network Electric and leaving the company was not an action sufficient to terminate their liability.[7] Accordingly, they were, and continue to be, obligated under the Indemnity Agreement.

---

[7]The Barlows' citation to Section 48-1d-703 of the Utah Code does not support their position. (See Developers' Opp'n Mem. (Doc. No. 67) at 27.)

The loss occurred during the active period of the Indemnity Agreement and so the Indemnitors are liable for the loss.

In the express language of the agreement, the Indemnitors agreed that unless they followed the termination procedures set forth in the Indemnity Agreement, they were under a continuing obligation:

> [T]his Agreement is a <u>continuing obligation of the Indemnitor unless terminated as to future bonds by written notice to [Developers]</u> as hereinafter provided . . . . In order to terminate liability as to any <u>future</u> Bond, the Indemnitor <u>shall</u>:
>
> 13.1    Give to [Developers] written notice of such termination by certified mail, return receipt requested, addressed to [Developers] at [Developers'] Address; and
>
> 13.2    State in such notice the effective date, which date shall not be less than 30 days following receipt of such notice by [Developers], of the termination of the liability of such Indemnitor for any future Bond.

(<u>Id.</u> ¶¶ 13.1-13.2 (emphasis added).)  Importantly, under the Indemnity Agreement, the Indemnitors agreed that they would continue to be liable for any bond executed before the effective date of the termination.  (<u>Id.</u> ¶ 13.3.)  There was no effective date of termination here. The obligation continued even after the Barlows ended their association with Network Electric.

The Indemnity Agreement is an unambiguous contract that must be enforced according to its terms.  See <u>Café Rio, Inc. v. Larkin-Gifford-Overton, LLC</u>, 207 P.3d 1235, 1240 (Utah 2009). "'It is not for a court to rewrite a contract improvidently entered into at arm's length or to change the bargain indirectly on the basis of supposed equitable principles.'"  <u>Hal Taylor Assocs. v. Unionamerica, Inc.</u>, 657 P.2d 743, 749 (Utah 1982) (quoting <u>Dalton v. Jerico Constr. Co. Utah</u>, 642 P.2d 748, 750 (Utah 1982)).  Developers is entitled to summary judgment on its breach of contract claim.

**ORDER**

For the foregoing reasons, Developers Surety and Indemnity Company's Motion for Partial Summary Judgment Against Defendants Teri Hansen, Matthew I. Barlow, and Lisa Barlow (Doc. No. 57) is GRANTED. Defendants Matthew and Lisa Barlow's Motion for Summary Judgment (Doc. No. 59) is DENIED. Developers' Motion to Strike (Doc. No. 66) is DENIED.

SO ORDERED this 22nd day of July, 2014.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge